IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOY V. SMITH | ) |
| | ) |
| v. | ) No. 3:10-0145 |
| | ) Judge Wiseman/Bryant |
| SOCIAL SECURITY ADMINISTRATION | ) |

To: The Honorable Thomas A. Wiseman, Jr., Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration"), through its Commissioner, denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), as provided under the Social Security Act ("the Act"). The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 17), to which defendant has responded (Docket Entry No. 19). Plaintiff has further filed a reply in support of his motion. (Docket Entry No. 20) Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 15),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED, and that the decision of the SSA be AFFIRMED.

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

# I. Introduction

Plaintiff filed her DIB and SSI applications on January 4, 2008, alleging disability onset as of December 31, 2005, due to arm and neck pain, tendonitis, bursitis, tenosynovitis, and carpal tunnel. (Tr. 44-46, 70) Her claim was denied at both the initial and reconsideration levels of agency review, whereupon plaintiff filed a request for de novo hearing before an Administrative Law Judge ("ALJ"). (Tr. 34) The ALJ held a hearing on October 3, 2008, at which plaintiff appeared with counsel and gave testimony. (Tr. 136-66) Testimony was also received from plaintiff's husband, and from an impartial vocational expert retained by the government. At the conclusion of the hearing, the ALJ took the case under advisement, until November 26, 2008, when he issued a written decision denying plaintiff's claim to benefits. (Tr. 15-22). The decision contains the following enumerated findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since December 31, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: obesity and tendonitis/bursitis (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant requires a sit/stand option during an 8-hour workday. The claimant can occasionally perform postural maneuvers such as balancing, stooping, kneeling, and crouching. The

handling.  The claimant can frequently push/pull with her upper extremities.  The claimant is restricted from climbing ladders, ropes, and scaffolding.  The claimant can occasionally climb ramps and stairs.  The claimant is restricted from working at unprotected heights.  The claimant is restricted from commercial driving.

>6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
>7.  The claimant was born on December 25, 1956 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).
>
>8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
>9.  The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968).
>
>10.  Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569a, 404.1568(d), 416.969, 416.969a, and 416.968(d)).
>
>11.  The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-18, 20-21)

On December 10, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 4-6), thereby rendering that decision the final decision of the Administration.  This civil action was thereafter timely filed, and the court has jurisdiction.  42 U.S.C. §§ 405(g), 1383(c)(3).  If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive.  Id.

## II. Review of the Record

The following review is taken from defendant's brief, Docket Entry No. 19, at pages 4-7:

### 1. Non-Medical and Vocational Evidence

Plaintiff was born on December 25, 1956 and was 51 years old as of the November 26, 2008 ALJ decision, which is the final decision at issue in this case (Tr. 22, 141). She graduated from high school and completed two years of college (Tr. 141). Plaintiff previously worked at Cass Product Incorporation as a dyna-filer and at Jack's as a biscuit prep maker (Tr. 142-43).

### 2. Medical Evidence

On January 16, 2008, in connection with her application for benefits, plaintiff stated that her prior employer, Cast Products Incorporated (CPI), sent her to a doctor in 2005, but she did not remember his name (Tr. 75). The doctor diagnosed tendonitis (Tr. 146). Plaintiff wrote that the CPI physician recommended that she wear a "tennis bracelet" and limit her work to light duty (Tr. 93). She also underwent a colonoscopy for an "ulcer in my colon." Id. She also claimed to have received treatment from Tamara McKelvy, Certified Registered Nurse Practitioner, at Athens Limestone Hospital (Tr. 95). Plaintiff listed her only medical provider as Athens Hospital Emergency Room (Tr. 73) and stated that she made several visits in 2007. Id. She was given a reflex test and treated with steroids and ibuprofen for pains in her arms and the back of her neck. Id.

On March 17, 2007, Plaintiff was seen at Athens Limestone Hospital emergency room for complaints of chest pain. A chest x-ray was normal, as was an

4

electrocardiogram (Tr. 118-20).  Plaintiff had been drinking heavily and smoking.  She was diagnosed with chest wall pain and was treated with morphine and aspirin (Tr. 116).  She was advised to decrease her drinking.  Id.  Plaintiff also indicated that she had no family doctor (Tr. 115, 120).

On November 8, 2007, Plaintiff was seen in the Athens Limestone emergency room for a splinter in her posterior right thigh (Tr. 110-13).  The 3/4 inch wood splinter was removed, the wound cleaned and sutured, and she was sent home on Keflex with instructions to return in seven days for suture removal (Tr. 110, 113).

On December 12, 2007, Plaintiff visited the Athens Limestone emergency room complaining of pain in her arms beginning that morning while making biscuits at work (Tr. 106).  She related a two-year history of "off and on" arm pain (Tr. 107).  She was treated with steroids in the past but had received no recent treatment from a doctor.  Id.  She was diagnosed with tenosynovitis/bursitis but no treatment was prescribed (Tr. 108).

On January 16, 2008, Plaintiff completed a form stating that her medical records were at Athens Limestone Hospital and her only medication was "Goody's."[2]  She left blank a space asking for the name(s) of any doctors she saw on a regular basis (Tr. 73-74).  Plaintiff also answered "no" to the question "[d]oes anyone else have medical records or information about your illnesses, injuries, or conditions (for example, Workers' Compensation, insurance companies, prisons, attorneys, or welfare agency), or are you scheduled to see anyone else" (Tr. 73).

On July 19, 2008, the ALJ wrote a letter to Plaintiff's counsel at the time, Paul

---

[2] Goody's is an over-the-counter combination of acetaminophen, aspirin, and caffeine used for minor aches and pains. http://www.goodyspowder.com/products_extrastrength.aspx

5

Holland, requesting that he review the enclosed exhibit record (from Athens Limestone Hospital) and submit all available medical evidence not included on the list (Tr. 102). No additional medical evidence was submitted until after the October 3, 2008, administrative hearing, when counsel provided a medication list from Plaintiff's pharmacy (Tr. 140, 165).

### 3. Hearing Testimony

At her administrative hearing on October 3, 2008, plaintiff testified that she was born December 25, 1956, was 51 years old, and had a high school education plus two years of college (Tr. 141-42). She last worked on December 31, 2007 (Tr. 142). She claimed an inability to work due to leg, ankle, back, and arm pain (Tr. 143). She spent most days laying down (Tr. 145). She said that in 2005, a doctor at her job diagnosed her with tendonitis and Athens Hospital staff diagnosed her with fibromyalgia (Tr. 146). She was never hospitalized for these conditions and had not seen any doctor recently because "most of the time I want to sleep, and take pain pills and muscle relaxers I was given" (Tr. 146). She rated her body aches and pain as 10/10 and described it as feeling like the flu (Tr. 147). She was unable to sit or stand for long periods (Tr. 148). She was unable to drive because of arm pain (Tr. 149). However, she also had a suspended driver's license (Tr. 152). During the day, she took over-the-counter "BC Body Aches" so she would not need prescription medication (Tr. 150).[3]

She lived in a rented house with her husband, daughter, and two grandchildren. Her husband did all the cooking at home and helped his daughter with

---

[3]BC Powder contains Aspirin, Salicylamine, and Caffeine and is for relief of occasional minor pain and inflammation of arthritis.
http://www.theodora.com/drugs/arthritis_strength_BC_powder

chores (Tr. 153-54). She estimated that she could walk "a few steps" and was unable to lift or carry 10 pounds (Tr. 154).

Plaintiff's husband also testified at the hearing and corroborated her testimony (Tr. 155-59). He stated that on a typical day, she "just lay around on the couch, and just complain about her pains all the time" (Tr. 156).

An impartial vocational expert testified that a hypothetical individual Plaintiff's age and with her education, experience, and residual functional capacity for a limited range of light work could perform such representative jobs as an assembler of small products, administrative clerk, and medical record clerk (Tr. 162). The expert testified that each of these jobs exists in numbers of approximately 8,000 in the local economy, and approximately 200,000 in the national economy (Tr. 163). Only the small products assembler job was reduced in number by 40 to 50 percent to accommodate a sit-stand option. Id. In response to questioning by Plaintiff's counsel, the VE stated that no work would exist for an individual who needed to lie down frequently during the workday, who experienced hand and arm pain at a level of 10 on a 10-point scale, or needed assistance to stand or walk (Tr. 164-65).

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be

found to be disabled.

5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483,

490 (6th Cir. 1988).

C. Plaintiff's Statement of Errors

Plaintiff first argues that the ALJ failed in his duty to fully and fairly develop the evidentiary record. Plaintiff cites subsection (d) of 20 C.F.R. § 404.1512 as the source of the duty that was allegedly breached. However, the context supplied by the first few subsections of this regulation is important, as set out in pertinent part below:

> **§ 404.1512. Evidence.**
>
> (a) *General.* In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence.
>
> (b) *What we mean by "evidence."* Evidence is anything you or anyone else submits to us or that we obtain that relates to your claim. . . .
>
> (c) *Your responsibility.* You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence showing how your impairment(s) affects your functioning during the time you say that your are disabled, and any other information that we need to decide your case. . . .
>
> (d) *Our responsibility.* Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical

> reports from your own medical sources when you give us permission to request the reports.
>
> . . .

20 C.F.R. § 404.1512.

In the case at bar, during initial proceedings on plaintiff's disability claim, the agency on January 16, 2008, asked plaintiff to identify medical sources which kept records or other information on her medical condition, and plaintiff identified only Athens Limestone Hospital in Athens, Alabama. (Tr. 73) She stated that no other provider had medical records related to her condition, and that she was not scheduled to see any other provider. Id. Accordingly, the following day, the agency mailed a records request to Athens Limestone Hospital (Tr. 103), and received in return seventeen pages of medical records related to three visits to that hospital's emergency room, on March 17, November 8, and December 12, 2007. (Tr. 104-20) Plaintiff argues that this scant amount of medical evidence was insufficient to support the agency's denial of her claim, and faults agency personnel (during initial proceedings) and the ALJ for failing to pursue medical evidence from other sources identified by plaintiff.

In particular, plaintiff states that the agency failed to pursue records from "Dr. Tamara Crup," whom plaintiff had identified as a treating physician when asked again to identify medical sources in agency paperwork related to her appeal of the initial denial decision. (Tr. 95) In response to this contention, defendant states that plaintiff's attorney mistakenly identified Tamara McKelvy, CRNP as "Dr. Tamara Crup," and that Ms. McKelvy (a certified registered nurse practitioner) in fact worked at Athens Limestone Hospital,

11

presumably in the emergency room, since the phone number plaintiff listed for Ms. McKelvy connects to the hospital. (Docket Entry No. 19 at 10 & n.6) While plaintiff's counsel objects that page 95 of the record clearly refers to "Dr. Tamara McKelvy Crup," and that defendant's reference to the operation of Ms. McKelvy's phone number impermissibly reaches outside of the administrative record in support of defendant's version of the facts (Docket Entry No. 20 at 2), the undersigned finds that page 95 of the record clearly refers to "Dr. Tamara McKelvy CRNP," who last treated plaintiff on December 12, 2007 – the date of one of her visits to the Athens Limestone emergency room, when she was treated by a nurse practitioner whose signature appears to belong to Ms. McKelvy – and that the address given by plaintiff for Ms. McKelvy on page 95 is in fact the street address of Athens Limestone Hospital, a fact revealed in the record. (Tr. 106) Plaintiff did not name any other medical provider in her submissions to the agency. (Tr. 73, 96) Accordingly, based on the information it had prior to the initial determination that plaintiff was not disabled, agency personnel did not fail to fulfill its responsibility in developing the record. (Tr. 26-31)

Plaintiff further argues that the ALJ was on notice of other treating sources as of the date that he received a complete list of plaintiff's medications and the name and DEA number of those who prescribed them a few days after the hearing in this case. (Tr. 123-25) Plaintiff argues that it was the ALJ's duty to utilize this information in fulfilling his affirmative duty to develop the factual record, a duty that "is not lessened even when a disability claimant is represented by counsel." (Docket Entry No. 20 at 6 (citing Osburn v. Apfel, 1999 U.S. App. LEXIS 16220 (6th Cir. 1999)) However, the cited Sixth Circuit opinion does not stand for the proposition it is cited for; indeed, quite the opposite – the panel in

12

Osburn recognized that the duty of developing a full and fair record is heightened in cases such as the one before it, where the claimant did not have a lawyer.  Osburn, 1999 WL 503528, at *7 (citing Lashley v. Sec'y of HHS, 708 F.2d 1048, 1051-52 (6th Cir. 1983).  It is not the rule in the Sixth Circuit, nor in the framework of 20 C.F.R. § 404.1512, that the SSA or its ALJs are expected to build the medical record from a claimant's bare claim form and identification of medical sources.  Rather, "[i]t is well-established in the Sixth Circuit that the [claimant], and not the ALJ, has the burden to produce evidence in support of her disability claim[,]" except to the extent that the ALJ's duty to develop the record made by the claimant is heightened *during the hearing* due to the fact that the claimant is "(1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures."  Guy v. Astrue, 2010 WL 1141526, at *11 (M.D. Tenn. Mar. 4, 2010) (citing cases and quoting Wilson v. Comm'r of Soc. Sec., 280 Fed. Appx. 456, 459 (6th Cir. May 29, 2008)); Morgan v. Astrue, 2010 WL 3723992, at *8-9 (E.D. Tenn. June 30, 2010) ("It is clear from a full reading of *Lashley* and *Wilson* that the Court of Appeals intended to impose a duty on ALJs to develop the record to the fullest extent possible *in the courtroom*, by taking extra time and extra care in questioning the [pro se] claimant and other witnesses during the hearing, and by making specific requests for additional documentation, testimony, or evidence that is unavailable at the hearing, but would be helpful in rendering a decision.  The Court of Appeals did not intend to impose a duty on ALJs to serve as a pro se claimant's investigator, researcher, records custodian, or advocate *outside of the courtroom*.").

      Plaintiff here was represented by counsel during and prior to the hearing

before the ALJ.[4] (Tr. 23, 34, 136-66) Thus, the ALJ did not have any heightened duty to develop the record. Rather, the burden remained with plaintiff and her counsel to obtain and submit the evidence of her disability, 20 C.F.R. § 404.1512(a), and the ALJ had only "an inquisitorial duty to seek clarification on material facts" during the hearing, if such clarification was necessary to ensure that the record be fully and fairly developed. Wright-Hines v. Comm'r of Soc. Sec., 597 F.3d 392, 396 (6th Cir. 2010). In the undersigned's view, the medical records that were received into evidence did not lack clarity or create any particular questions which, in view of the testimony received at the hearing, would have fallen to the ALJ to resolve. In particular, the medication list which plaintiff provided *after the hearing* cannot be said to have triggered the ALJ's duty to clarify any material facts before rendering his decision, since the hearing testimony was that plaintiff only took BC powder for pain relief, and did not take any medication prescribed for her other than a recently prescribed muscle relaxer, for fear of "getting hooked" on the prescription medication. (Tr. 150-52) Accordingly, plaintiff's first contention lacks merit.

Plaintiff next argues that the ALJ improperly limited his consideration of plaintiff's credibility to the issues of her alleged difficulty with walking, the notation in the record of plaintiff's "drinking heavily," and the proof that she was able to sustain regular work activity for limited periods in which she alleges disability, while otherwise failing to conduct a meaningful inquiry into the factors set out in SSR 96-7p as relevant to the credibility determination. Without belaboring the issue, the undersigned finds no error in the ALJ's determination of plaintiff's credibility, nor the credibility of her husband's largely

---

[4]It bears noting that the ALJ twice notified counsel, in writing, of the need to submit timely any additional evidence in support of plaintiff's claim. (Tr. 39, 102)

duplicative testimony, based on the ALJ's thorough discussion of the issue, at page 4 of his decision, and explication there of his difficulty accepting testimony of excruciating pain that leaves plaintiff essentially bedridden, when the proof shows that plaintiff did not seek regular medical treatment for her pain; took BC powder in lieu of more powerful painkillers despite pain that was described as a 10 on a 10-point scale; was able to perform significant work activity during her alleged period of disability and was only forced to quit because of the strength demands of the job, rather than an inability to persist through the pain; and complained of problems walking despite the lack of any alleged impairment that would impact her ability to walk.[5]  (Tr. 19)  Contrary to plaintiff's argument, it cannot be reasonably suggested that the ALJ unduly focused on plaintiff's alcohol consumption by the one reference to the matter in his summary of the medical evidence (Tr. 17, 116-18), or that his credibility finding turned on plaintiff's unsubstantiated complaint of difficulties with walking.  Moreover, the ALJ did not take plaintiff's limited work activity and "expand[] the hours of employment to support full time work activity" (Docket Entry No. 18 at 15), but rather considered this activity as among the factors discrediting plaintiff's claim to being incapable of any activity.  Despite ample grounds upon which to dismiss plaintiff's subjective complaints, the ALJ nonetheless found her limited by tendonitis/bursitis and obesity to a reduced range of light work.  Neither SSR 96-7p nor any other of the SSA's rulings or

---

[5]The undersigned notes that the only medical proof related to plaintiff's ability to walk are the notations that she ambulated to the emergency room triage area without problems, and with a steady gait. (Tr. 106, 111)  While plaintiff concedes the lack of any medical impairment that would affect her ability to walk, and suggests that this difficulty was related in the past to powerful pain medications prescribed in the past (Docket Entry No.18 at 13), this is inconsistent with plaintiff's hearing testimony that pain and weakness in her leg muscles cause the alleged instability while walking.  (Tr. 149)

15

regulations require more than was offered here in terms of the analysis of a claimant's credibility. The ALJ's credibility finding is due great weight and deference on judicial review, Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003), and no grounds for setting it aside appear from the ALJ's decision or the evidentiary record in this case.

Finally, plaintiff argues that the record does not support her prior work in data entry positions for such a sustained period as to qualify them as substantial gainful activity, and that they are thus not properly considered past relevant work that would enable the transferability of any skills acquired in those jobs. While the vocational expert characterized plaintiff's prior data entry work as past relevant work from which relevant skills would transfer to the jobs of medical record clerk and administrative clerk (Tr. 160-62), the undersigned must concur with plaintiff that the details of this data entry work are not adequately established in the record (Tr. 63, 86-89) to justify its being named past relevant work from which skills may transfer. See 20 C.F.R. § 404.1565 ("We consider that your work experience applies [as a vocational factor indicative of ability to adjust to other work in the economy] when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity."). Nonetheless, regardless of the availability of the semi-skilled jobs which the expert identified, the unskilled job of small products assembler was also identified as available to a person with plaintiff's residual functional capacity and vocational factors, in numbers exceeding 8,000 in plaintiff's regional economy and 200,000 in the national economy, after a 40-50% reduction because of the need to alternately sit or stand at will in the performance of this job. (Tr. 161-63) Even if the expert's testimony could be read as applying the 40-50% reduction to the 8,000 regional and

200,000 national jobs, the resulting numbers of jobs (roughly 4,000 in the region and 100,000 in the nation) would clearly be sufficient to qualify as "significant" under the Act. Cf. Putman v. Astrue, 2009 WL 838155, at *3 (E.D. Tenn. Mar. 30, 2009) ("The Court recognizes that 200-250 positions in the region and 75,000 positions in the national economy is not an overwhelming number. Other courts considering this issue, however, have found that a similar number of jobs constitutes significant work in the national economy." (citing cases)); Bull v. Comm'r of Soc. Sec., 2009 WL 799966, at *6 (N.D.N.Y. Mar. 25, 2009) (citing cases).

While the ALJ did not explicitly find this small products assembler job as among the available jobs existing in significant numbers in the economy (Tr. 21), this omission may be deemed harmless error and the missing dispositive finding supplied "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." Keels v. Astrue, 2008 WL 2433200, at *10 (E.D. Mich. June 12, 2008) (quoting Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005)). Inasmuch as the availability of a significant number of unskilled jobs moots the question of transferability of skills, and the expert's testimony regarding the existence and number of these jobs has not been challenged, the undersigned finds that no reasonable factfinder could have considered this proof in any other way but dispositive of plaintiff's ability to perform other jobs existing in significant numbers in the economy, irrespective of her acquired work skills and their transferability. Accordingly, the omission of such a finding was harmless error, and the decision of the SSA should be affirmed.

## IV. Conclusion

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

ENTERED this 1st day of March, 2011.

    s/ John S. Bryant
    JOHN S. BRYANT
    UNITED STATES MAGISTRATE JUDGE